# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| **LISABETH SPENNEBERG,** § | | |
| § | | |
| Plaintiff, § | CIVIL ACTION NO. 3:17-cv-99 | |
| § | | |
| v. § | JURY TRIAL DEMANDED | |
| § | | |
| **TGE INDUSTRIAL SERVICES, LLC,** § | | |
| § | | |
| Defendant. § | | |
| § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. This action seeks actual damages, liquidated damages, attorney's fees, taxable costs of court, and interests as allowed by law for Defendant TGE Industrial Services, LLC's ("Defendant") failure to pay Plaintiff Lisabeth Spenneberg ("Plaintiff"), a female, equally for performing substantially similar work that involved the same effort, skill, responsibility, and working conditions as male employees in violation of the Equal Pay Act ("EPA") of 1963 as incorporated as a part of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. This action also seeks damages under 29 U.S.C. § 215(3) because Defendant retaliated against her by terminating her employment because she complained that she was being paid less than male employees performing the same work.

### SUBJECT MATTER JURISDICTION AND VENUE

2. This court has federal question jurisdiction over the subject matter of this action per 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. § 216(b).

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District.

4. Plaintiff worked in this District when the violations took place.

5. Defendant TGE Industrial Services, LLC maintains its principal headquarters in Pasadena, Texas.

### PARTIES AND PERSONAL JURISDICTION

6. Plaintiff Lisabeth Spenneberg is an individual residing in Calhoun County, Texas. Plaintiff's written consent to this action is attached hereto as Exhibit A.

7. Defendant TGE Industrial Services, LLC is a limited liability company organized under the laws of Texas. Defendant may be served process through its registered agent Michael G. Donohoe, 580 Decker Drive, Suite 260, Irving, Texas 75602 or wherever he may be found.

### EPA COVERAGE

8. At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA of Plaintiff and, by extension, the EPA. 29 U.S.C. § 203(d).

9. The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

10. "The Supreme Court has made clear that the FLSA extends federal control 'throughout the farthest reaches of the channels of interstate commerce.'" *Alvarez v. Amb-Trans Inc.,* 2012 WL 4103876 *2 (W.D. Tex., 2012), (citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 567). "The Fifth Circuit has also emphasized that no de minimis rule applies to the FLSA; any regular contact with commerce, no matter how small, will result in coverage." *Alvarez,* 2012 WL 4103876 *2 (*Citing Marshall v. Victoria Trans. Co., Inc.,* 603 F.2d 1122, 1124 (5th Cir.1979)).

11. "The FLSA protects employees who fall under either of two types of coverage: (1) 'enterprise coverage,' which protects all those who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce,' or (2) 'individual coverage,' which protects those who are individually 'engaged in commerce or in the production of goods for commerce,' regardless of whether the employer constitutes an enterprise." *Duran v. Wong* 2012 WL 5351220, *2 (S.D. Tex., 2012); *See also*, 29 U.S.C. § 207(a)(1); *See also Martin v. Bedell,* 955 F.2d 1029, 1032 (5th Cir. 1992) (*"Either* individual *or* enterprise coverage is enough to invoke FLSA protection.").

12. Both the individual and enterprise coverage are applicable in this case.

13. First, with regards to individual coverage, the FLSA states that if the employee is "engaged in commerce or in the production of goods for commerce," individual coverage applies. 29 U.S.C. § 207(a)(1). "In determining whether an employee is engaged in interstate commerce within the meaning of the FLSA, the Fifth Circuit applies a 'practical test.'" *Aberle v. Saunders MEP, Inc.,* 2011 WL 2728350, *3 (E.D.Tex., 2011) (*citing Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.,* 474 F.3d 828, 829 (5th Cir. 2007)). "Any regular contact, no matter how minimum, will result in coverage under the FLSA. *Id*. (*citing Marshall v. Victoria Transp. Co.,* 603 F.2d 1122, 1124 (5th Cir. 1979)); (*See also*, *Sobrinio,* 474 F.3d at 829). "The employee's work must be "entwined with the continuous stream of interstate commerce.'" *Id*. (citing *Marshall,* 603 F.2d at 1125). "A key factor in determining if a plaintiff engaged in commerce for purposes of individual coverage under the FLSA is whether such activities were a 'regular and recurrent' part of the plaintiff's employment duties." *Id*. (*citing,* 29 C.F.R. 776.10(b)).

14. At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

15. Here, Defendant employed Plaintiff as part of its construction business. Plaintiff's regular job duties consisted handling tools, pipe, and other equipment and tools that moved through interstate commerce.

16. Second, with regards to enterprise coverage, the FLSA states that it applies to "employees of enterprises that (1) have other employees engaged in interstate commerce and (2) have an annual gross volume of business equal to or in excess of five hundred thousand dollars." *Aberle,* 2011 WL 2728350, *3, *(citing,* 29 U.S.C. § 203(s)(1)(A)).

17. Here, Defendant has had, and continues to have, an annual gross business volume in excess of the statutory minimum.

18. In addition to Plaintiff, Defendant has employed numerous other employees, who like Plaintiff, are employees engaged in interstate commerce. Further, Defendant itself engaged in interstate commerce because it orders supplies across state lines, conducts business deals with merchants across state lines, advertises on the internet with companies based in other states, and sells equipment that moved across state lines.

## FACTS

19. Defendant TGE Industrial Services, LLC is a construction, maintenance, and management services company for the oil, gas, refining, and petrochemical industries.

20. Plaintiff Spenneberg worked for Defendant as a Pipefitter Plus from approximately September of 2016 to March of 2017 when she was terminated for raising concerns that she was being paid less than her male counterparts.

21. Plaintiff has worked as a pipefitter for approximately 16 years for a variety of employers.

22. Pipefitters install and repair high and low pressure pipe systems used in manufacturing, in the generation of electricity, and in the heating and cooling of buildings.

23. Pipefitters are certified by The National Center for Construction Education and Research ("NCCER"). The NCCER promulgates testing and practical experience requirements for movement between various grades of certification.

24. Plaintiff is an active holder of an NCCER Pipefitter Plus Certification. As a holder of this certification, she is able to begin work on new pipefitting jobs without taking a written test, whereas holders of a basic NCCER Pipefitter Certification are required to take a test before beginning work with a new company.

25. Plaintiff worked for Defendant through Defendant's contract with PCL Construction, Inc. ("PCL"). In turn, PCL was contracted with the DOW Chemical Company ("DOW") to construct new facilities on DOW's plant in Freeport, Texas.

26. Defendant's crew on the DOW construction project is an "establishment" within the meaning of the EPA. *See* 29 C.F.R. § 1620.9.

27. Plaintiff was the only female holder of a NCCER Pipefitter Plus Certification on Defendant's crew at the DOW project.

28. Defendant paid Plaintiff $32 an hour. In March of 2017, Plaintiff learned that Defendant's base wage for pipefitters holding a NCCER Pipefitter Plus Certification was $34 an hour.

29. Defendant was aware upon hiring that Plaintiff held an NCCER Pipefitter Plus Certification. She provided her NCCER card at the time of her hire and was not required to take a written test before beginning work.

30. All of Defendant's pipefitters perform substantially similar work. They measure and cut pipe, bolt pipes and valves together, and perform other general construction work.

31. Defendant pays its pipefitters on the DOW job according to a set schedule. Those pipefitters holding a basic NCCER certification are paid $32 an hour, those holding an NCCER Plus certification, except Plaintiff—the only female—are paid $34 an hour.

32. Plaintiff's work required the same responsibilities, skill, and effort of Defendant's male pipefitters. They were performing virtually identical work on the DOW construction job.

33. Plaintiff personally worked with other pipefitters holding an NCCER Pipefitter Plus certification that were hired after she was hired, with less work experience and skill than her that were paid $34 an hour.

34. Upon finding out that newly hired NCCER Pipefitter Plus employees were earning $34 an hour, Plaintiff made inquiries with her immediate supervisors as to why she was being underpaid.

35. Plaintiff contacted human resources and was informed that Defendant's base hire rate for pipefitters holding an NCCER Pipefitter Plus certification was $34 an hour and had been so since her hiring date.

36. On March 23, 2017 Defendant's human resources department summoned Plaintiff for a meeting. Instead of correcting her pay, Defendant informed Plaintiff that she was terminated.

37. As a justification for her termination, Defendant informed Plaintiff that she was being fired for complaining about "equal work for equal pay" and for threating to contact the Department of Labor. In other words, Defendant terminated Plaintiff for engaging in protected activity under the FLSA.

## CAUSES OF ACTION

### Count I
### Violation of the Equal Pay Act

38. Plaintiff incorporates the preceding paragraphs by reference.

39. Under the Equal Pay Act,

> No employer having employees subject to [the FLSA's minimum wage requirements], shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 203(d)(1).

40. Defendant paid male pipefitters on its DOW construction project performing equal work as Plaintiff more than Plaintiff.

41. None of the defenses to underpayment under the EPA are applicable. Defendant's compensation structure for pipefitters is not based on seniority, merit, or a system that measures earnings by quantity or quality. Instead, Defendant's compensation system is based on whether, at the time of hire, a pipefitter holds a basic NCCER certification or an NCCER Pipefitter Plus certification.

42. As a result of Defendant's under compensation of Plaintiff, she is owed the difference between the amount Defendant paid her and her similarly situated male colleagues.

### Count II
### Violation of the Fair Labor Standards Act
### Retaliation

43. Plaintiff incorporates the proceeding paragraphs by reference.

44. Defendant terminated Plaintiff's employment because she engaged in protected activity under 29 U.S.C. § 215(a)(3), specifically, Plaintiff complained to her supervisor and to human resources that she was being paid less that her male coworkers performing the same work.

45. As a result of Defendant's retaliation, Plaintiff has suffered damages, including but not limited to, emotion distress, lost wages, and legal costs. As of the filing date of this Compliant, Plaintiff has been unable to secure replacement employment.

46. Defendant's conduct was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

47. For this act of retaliation, Plaintiff seeks compensatory, emotional distress, and punitive damages, as well as attorney's fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## DAMAGES SOUGHT

48. Plaintiff is entitled to recover the difference between her wages and the wages Defendant paid to male employees performing the same work.

49. Plaintiff is entitled to recover an equal amount of her unpaid wages as liquidated damages.

50. Plaintiff is also entitled to recover her attorney's fees and costs as required by the FLSA.

51. As to Count II, Plaintiff is entitled to recover an award of general and compensatory damages, including but not limited to emotion distress.

52. As to Count II, Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

53. Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend. VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

**PRAYER FOR RELIEF**

54. For these reasons, Plaintiff respectfully requests that judgment be entered in favor of herself awarding her:

   a. Unpaid wages;

   b. An equal amount of her unpaid wages as liquidated damages, as allowed under the FLSA;

   c. Damages for emotion distress;

   d. Punitive damages;

   e. Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA; and

   f. Such other and further relief to which Plaintiff may be entitled, both in law and in equity.

                                                Respectfully submitted,

                                                By: /s/ Beatriz Sosa-Morris
                                                Beatriz Sosa-Morris
                                                SOSA-MORRIS NEUMAN
                                                ATTORNEYS AT LAW
                                                BSosaMorris@smnlawfirm.com
                                                Texas State Bar No. 24076154
                                                5612 Chaucer Drive
                                                Houston, Texas 77005
                                                Telephone: (281) 885-8844
                                                Facsimile: (281) 885-8813

                                                LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND
                                                CLASS MEMBERS

OF COUNSEL:
John Neuman
JNeuman@smnlawfirm.com
State Bar No. 24083560
SOSA-MORRIS NEUMAN
ATTORNEYS AT LAW

5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8630
Facsimile: (281) 885-8813